172 N.J. Super. 93 (1980)
410 A.2d 1184
ANDREW N. CAMPBELL AND DORIS E. CAMPBELL, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
RANDVILLE CONSTRUCTION CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND THEODORE MAGLIONE, INDIVIDUALLY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 1980.
Decided January 22, 1980.
*94 Before Judges FRITZ, KOLE and LANE.
Bell, Adubato & Ligham, attorneys for appellant and cross-respondent (Daniel S. Bell on the brief).
Mandelbaum, Salsburg, Gold & Lazris attorneys for respondents and cross-appellants (Avrom J. Gold and Henry G. Klein on the brief).
PER CURIAM.
Plaintiffs purchased a new home from the corporate defendant[1] which built the home. They sued that defendant and its *95 president for damages resulting from the death of trees on the property and from settling and erosion of the land. The trial judge sitting without a jury dismissed all claims against the individual defendant at the end of plaintiffs' case. He also dismissed plaintiffs' claims arising from soil erosion. At the close of all the evidence he awarded plaintiffs a judgment for $10,000 for damage occurring to the trees.
Defendant appealed and plaintiffs cross-appealed from the dismissals.
Turning first to the cross-appeal, we find no merit in it. The judge found "nothing at all in the proofs" to implicate the individual defendant. Indeed, he also found, justifiably, that plaintiffs "made their bargain with the corporation." The judge's findings might reasonably have been reached on sufficient credible evidence in the whole record and we will not disturb them. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974). With respect to the soil erosion the judge found that the "sheer geography" of the tract revealed the problem to any purchaser. He concluded that plaintiffs' proofs did not enable him to separate the natural problems from those "artificial elements that may have been added by the builder." Convinced that "the greater bulk of the terrain problems are natural ones," he determined in effect that plaintiffs had not borne their burden of proof on the soil erosion difficulties. We believe these findings are unassailable. Rova, supra; Kaplowitz v. K & R Appliances, Inc., 108 N.J. Super. 54, 61 62 (App.Div. 1969), certif. den. 55 N.J. 452 (1970). Because of our determination that the trial judge erred in the entry of judgment for the tree damage, we need not deal with plaintiffs' appeal from the denial by the trial judge of prejudgment interest.
It must be understood that with respect to the trees there is in this case no express warranty and no proof of negligence on defendant's part. In fact, it appears that the land had been entirely graded by a predecessor to defendant and the foundation *96 of the house had been partially laid when defendant bought the premises and completed the job. Plaintiff Doris Campbell, who had a "real estate license," conceded in her testimony that she saw the house while looking for listings, that there was no written contract and there were no discussions regarding the condition of the property or anything of that nature, nothing relating to "the construction of the house and the grounds" (Mrs. Campbell said "I saw what was there.") and nothing "about the house and the surrounding area, the trees ..."
The trial judge relied wholly on a theory of implied warranty. He said when defendant made this sale,
... it impliedly warranted that either [sic] it nor its predecessors had done anything to impair the fundamental character of the lot to be conveyed and there was an implied warranty here that so far as artificially created problems were concerned, the trees were as they appeared to be, namely, healthy trees, the vast majority of which could be expected to survive into the indefinite future....
He relied for this theory solely upon Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965) and McDonald v. Mianecki, 159 N.J. Super. 1 (App.Div. 1978), aff'd 79 N.J. 275 (1979). In this we think we went astray.
As Schipper points out, the imposition of the "warranty or strict liability principles" (of the personal property sale cases; 44 N.J. at 90) upon the "realty field" is a departure from old principles thought to be justified by "current concepts of what is right and just." Ibid. But both Schipper and McDonald dealt with conditions which if not right jeopardized further utilization of the premises, at least without a very substantial, clear and present risk to the physical well-being of the occupants. The fact of or the potential for physical injury is manifest in both cases. While the Schipper doctrine, being formulated on a "step by step" developing basis (44 N.J. at 90; Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 64 (1965)), may be found ultimately to be less restrictive than the foregoing, we are satisfied *97 that no reason appears in the case before us here to extend this departure from prior law. First, we deal only with curtilage vegetation incidental to the residence. We do not thereby disparage its value. We have no doubt that its presence enhances the price. But that value  at least here  is wholly esthetic. Second, in the event of damage to property of this kind, whether by the vendor in any case or his predecessors, ascertaining the cause is infinitely more difficult than placing the responsibility for dangerously heated water (Schipper) or bad well water (McDonald). Third, irrespective of the foregoing, any concern for habitability in terms of trees projects no threat of physical injury, at least in this case.
It appears to us that a balancing of these factors against the policy considerations with which Schipper and McDonald are concerned conduces to a refusal to extend to the circumstances before us the departure of those cases from settled law. If the trees were as important to the purchase as plaintiffs contend it seems little enough to require that in such circumstances the purchaser secure an express warranty. Where physical well-being is not implicated we believe the desirability for certainty thus produced as to what is important to whom and who promised what about it is a worthwhile goal.
We reverse the judgment for plaintiffs and remand for entry of judgment in favor of both defendants.
NOTES
[1] Unqualified reference herein to "defendant" is to the corporate defendant.